**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| **HENRIETTA J. MERCER,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **Civ. Action No. 4:11-cv-3600** |
| | § | |
| **ARBOR E&T d/b/a RESCARE** | § | |
| **WORKFORCE SERVICES, and** | § | |
| **TIM FOLEY** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM AND ORDER

Before the Court is Arbor, E&T, LLC d/b/a ResCare Workforce Services and Tim Foley's Partial Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) for Failure to State a Claim ("Motion"). (Doc. No. 16.) After considering the Motion, Plaintiff's Response, and the applicable law, the Court concludes that the Motion should be **GRANTED** in part and **DENIED** in part.

### I. BACKGROUND

All facts are taken from Plaintiff's First Amended Complaint. (Doc. No. 12.) For the purposes of this Motion to Dismiss only, the Court considers all well-pleaded facts in the First Amended Complaint to be true. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). This Court has jurisdiction pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 as amended ("Title VII"), Title I of the Americans

with Disabilities Act of 1990 ("ADA"), and these statutes' related anti-retaliation regulations.

In October of 2008, the company ResCare Workforce Services ("ResCare") hired Henrietta J. Mercer ("Mercer" or "Plaintiff") as an Operations Manager in its Bryan, Texas office. (Am. Compl. ¶ 11.) Plaintiff is an African American female who suffers from an anxiety disorder. (*Id.*) In June of the following year, another African American employee, Chloe Taylor ("Taylor"), lodged a race discrimination complaint against Harold Womble ("Womble"), the Interim Project Director. (*Id.* ¶ 12.) As Plaintiff served as a witness in support of the discrimination complaint, Womble[1] "became outraged" at Plaintiff and forwarded a letter to the corporate office recommending that Plaintiff, as well as two other minority employees, be terminated. (*Id.* ¶¶ 12-13.)

Tim Foley ("Foley") replaced Womble as Project Manager.[2] (*Id.* ¶ 14.) In August of 2009, Kenneth Sargeon ("Sargeon"), an African American employee, lodged a complaint against Foley complaining that the white employees were held to a different, and more favorable, standard than the African American employees. (*Id.* ¶ 15.) In response, Foley harassed Sargeon by setting unrealistic goals for him. (*Id.* ¶ 16.) Foley also informed Plaintiff that she had "too many staff who look[ed] like" her. (*Id.* ¶ 17.) Folely boasted that "Womble's fate" would not "happen to him," and told Plaintiff that she should not have served as a witness to Taylor's complaint. (*Id.*) He claimed that the Board of Directors should not be notified of any discrimination complaint, and further

---

[1] The First Amended Complaint uses two different spellings of the Interim Project Director's name: Womble and Wombly. For the purposes of this Memorandum and Order, the Court assumes that Womble is the correct spelling.

[2] Although the First Amended Complaint states that Foley replaced Womble, it uses a different title for Foley's position. The Court will assume, for the purposes of this Memorandum and Order, that "Interim Project Director" and "Project Manager" are merely different titles for the same position.

2

explained to Plaintiff that he had individuals in mind who he hoped would replace two minority employees, Dora Lopez ("Lopez") and Latresia Williams ("Williams"). (*Id.* ¶ 17.)

In September of 2009, Foley announced at a manager's meeting that Lopez's and Williams' positions  were being eliminated. (*Id.* ¶ 18.) Also that month, Carin Shulford ("Shulford"), a white female, visited ResCare. (*Id.* ¶ 19.) Foley informed Plaintiff that Shulford would replace Lopez. (*Id.*) Foley explained that he was also recruiting two new white employees, Sonny Musick ("Musick") and Cynthia Belt ("Belt"), and was transferring Marshall Robinson, an African-American employee, from his current position. (*Id.*) The following month, Foley insisted that Sargeon be supervised closely and announced that Sargeon's position was in jeopardy because he had complained about his work experiences. (*Id.* ¶ 22.) Additionally, Foley expressed that Sargeon should no longer work at the front desk because he was "too black and ugly" and dressed "too ghetto." (*Id.*) Plaintiff was admitted to the hospital for chest pains at the end of October; she felt that her health was suffering because the workplace environment was unbearable. (*Id.* ¶ 23.)

In November of 2009, Foley told Plaintiff that he was terminating LaRue Hogate ("Hogate") because Hogate had complained about him to Human Resources. (*Id.* ¶ 25.) Foley also yelled at Plaintiff for complaining about him to the Board of Directors. (*Id.* ¶ 24.) In March of 2010, an African American employee complained about her supervisor, who had told the employee that she "had several strikes against her": she was "fat," "black," "diabetic," and "female." (*Id.* ¶ 26.) Although that employee was nominated

Employee of the Month by her peers, Foley opposed her nomination because she had "loose lips." (*Id.* ¶ 27-28.)

Plaintiff lodged a discrimination complaint against Foley in April 2010 with the human resources department. (*Id.* ¶ 29.) To retaliate against Plaintiff, Foley insisted that Plaintiff hand-deliver reports to him instead of e-mailing them; when Plaintiff hand-delivered the reports, Foley would intimidate her. (*Id.* ¶ 30.) The Human Resources Director Sherry Dawson ("Dawson") held a closed meeting with Foley about Plaintiff's complaint. (*Id.* ¶ 31.) When Dawson called Plaintiff in to join the meeting, Dawson stated that, "The Workforce Board and Arbor are very happy with Tim [Foley] and he is not going anywhere." (*Id.*) Dawson went on to accuse Plaintiff of gossiping on the job. (*Id.*) During the meeting, Plaintiff complained about Foley's aggressive behavior, threats, and tirades. (*Id.*) When Dawson requested that Foley refrain from yelling at Plaintiff, Foley leaned across the table toward Plaintiff and stated, "No, I cannot say I will stop yelling at you!" (*Id.*) In response, Dawson informed Foley and Plaintiff that it would be in the company's best interest for the two to work up an agreement plan between them. (*Id.*)

Plaintiff's doctor informed her that, due to her stress and fear, she should take medical leave. (*Id.* ¶ 32.) At the beginning of May, Plaintiff faxed the Family Medical Leave Act ("FMLA") paperwork to the Human Resources Specialist. (*Id.* ¶ 33.) Plaintiff also informed Foley that her physician had recommended a leave of absence due to her health. (*Id.*) Foley rejected the opinions of Plaintiff's physician and ordered that an upcoming project be completed before Plaintiff could go on leave. (*Id.*) Within hours, Plaintiff was rushed to a hospital emergency room because she was suffering from

workplace stress and anxiety. (*Id.*) When Plaintiff met with her physician again in May, she was told that she should not return to work for medical reasons. (*Id.* ¶ 35.)

During Plaintiff's mid-year evaluation meeting, Foley insisted that Plaintiff sign a response to the discrimination complaint. (*Id.* ¶ 34.) Plaintiff refused because the statement was inaccurate. (*Id.*) Foley then threatened Plaintiff. Although Plaintiff set up a meeting with Foley in July to discuss her return to work, Foley failed to appear. (*Id.* ¶ 36.) When Plaintiff returned to her work on August 12, 2010, she was informed that her Operations Manager position had been posted as vacant. (*Id.* ¶ 38.) Plaintiff's colleagues also congratulated her on her new position as Rural County Supervisor. (*Id.*) Foley later called Plaintiff and asked her why she had not applied for the Rural County Supervisor position. (*Id.* ¶ 39.) When Plaintiff applied for the Operations Manager position instead, Foley stormed into Plaintiff's office and screamed, "Why did you apply for the Operations Manager position when I told you Sonny [Musick] is getting that job?" (*Id.* ¶ 40.) Although Plaintiff met with Foley again to inform him that she wanted to keep her position as Operations Manager, he demanded that she write a letter stating that she wanted to be demoted to Rural County Supervisor and take a pay cut. (*Id.* ¶ 42.) After Foley had pressured her three times, Plaintiff wrote the letter requesting to be demoted. (*Id.*)

In September of 2010, Foley screamed at Plaintiff because he had heard that she had contacted Steve Rye ("Rye").[3] (*Id.* ¶ 44.) Foley threatened Plaintiff that he would fire her immediately if he found out that she had complained to the Board of Directors or Rye about him. (*Id.*) Plaintiff was so frightened that she contacted the Bryan Police Department. (*Id.*) When Plaintiff was officially demoted to Rural County Supervisor later

---

[3] The First Amended Complaint does not explain Rye's position at ResCare.

that month, Foley demanded that Plaintiff vacate her office and instead occupy a cubicle; Foley informed Plaintiff that her office would be given to Musick or to Michael Root, both white males. (*Id.* ¶ 45.) Plaintiff believes that once he was promoted to Operations Manager, Musick earned more money and benefits than Plaintiff had in the same position. (*Id.* ¶ 46.) Despite her demotion, Plaintiff continued to perform the duties of Operations Manager. (*Id.* ¶ 50.) On September 24, 2010, Plaintiff was told that due to budget cuts she would be laid off. (*Id.* ¶ 48.) Plaintiff started experiencing chest pains and was immediately transported to the hospital via ambulance. (*Id.*) She was officially terminated six days later, on September 30. (*Id.* ¶ 49.)

According to Plaintiff, she was deprived of equal employment opportunities as a result of her race, gender, disability, and opposition to discrimination. (*Id.* ¶ 51.) After receiving a Right to Sue letter from the Equal Employment Opportunity Commission ("EEOC"), Plaintiff filed this lawsuit against ResCare and Foley (collectively, "Defendants"), alleging race discrimination pursuant to 42 U.S.C. § 1981 and Title VII by ResCare; sex discrimination pursuant to Title VII by ResCare; disability discrimination pursuant to the Americans with Disability Act ("ADA") by ResCare; retaliation pursuant to 42 U.S.C. § 1981, Title VII, and the ADA by ResCare; intentional infliction of emotional distress as to ResCare and Foley; and assault and battery as to ResCare and Foley. (*Id.* ¶¶ 52-76.) Defendants filed this Motion, seeking to dismiss Plaintiffs' claims for (1) sex discrimination under Title VII; (2) violations of the ADA; (3) retaliation under any statute; and (4) intentional infliction of emotional distress. (Mot. Dismiss at 2.) Defendants do not seek to dismiss Plaintiffs' claims for race discrimination or for assault and battery. (*Id.*)

## II. LEGAL STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.*  A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff.  The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citation omitted).  The court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips*, 401

F.3d 638, 642 (5th Cir. 2005) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004)).

### III. ANALYSIS

The Court agrees with Defendants that Plaintiff has failed to state a claim for intentional infliction of emotional distress and for violation of the ADA. The Court concludes that Plaintiff's sex discrimination and retaliation claims survive the Motion to Dismiss. Additionally, the Court determines that, while the intentional infliction of emotional distress claim should be dismissed with prejudice, the ADA claim is dismissed without prejudice to Plaintiff's amending it within 7 days of the date of this Memorandum and Order.

### A. Sex Discrimination Under Title VII

Title VII protects employees from discrimination based on their sex. 42 U.S.C. § 2000(e). Defendants urge that Plaintiff does not state a claim for sex discrimination because she has not met the requirements for a *prima facie* case of discrimination under the *McDonnell Douglas Corp. v. Green* framework. Namely, Defendants argue that Plaintiff's sex discrimination claim fails because she has not pleaded a plausible case that (1) she is a member of a protected class; (2) she was qualified for the position at issue; (3) she was the subject of an adverse employment action; and (4) she was treated less favorably because of her sex than were other similarly situated employees. (Mot. Dismiss at 4.) *See also McDonnell Douglas Corp.*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

However, the Supreme Court has explained that "[t]he prima facie case under *McDonnell Douglas* …   is an evidentiary standard, not a pleading requirement."

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002). Rather, "the ordinary rules for assessing the sufficiency of a complaint apply." *Id.* at 534 U.S. at 511, 122 S.Ct. at 997 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 74 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("Whether a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.")). *See also Puente v. Ridge*, 324 Fed.Appx. 423, 427 (5th Cir. 2009) (unpublished) ("[F]or purposes of surviving a Rule 12(b)(6) motion to dismiss, an employment discrimination plaintiff need not plead a prima facie case of discrimination. Still, this court may consider the *McDonnell Douglas* framework, and no plaintiff is exempt from her obligation to allege facts sufficient to state all the elements of her claim." (quotations and citations omitted)); *Kelso v. Paulson*, No. 3:08–CV–0961–B, 2009 WL 972997, at *6 (N.D. Tex. April 9, 2009) ("[T]he United States Supreme Court has made it clear that a plaintiff in an employment discrimination case need not plead a prima facie case to survive a motion to dismiss. Rather, a plaintiff need only follow Rule 8's command that a complaint contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' In other words, the plaintiff must put the defendant on notice of the charges against it and the grounds behind them." (citations omitted)); *Ollie v. Plano Indep. School Dist.*, 564 F.Supp.2d 658, 662 (E.D. Tex. 2008) ("It is … immaterial at this [12(b)(6)] stage whether [the plaintiff] has pled facts sufficient to make out a *prima facie* case [of employment discrimination]."); *Carlisle v. McCoco Pension Trust*, No. Civ.A. 304CV0770B, 2005 WL 742901, at *4 (N.D. Tex. March 31, 2005) ("[Plaintiff] is not required to make out a

*prima facie* case of discrimination in order to survive a motion to dismiss. Instead, he must only plead sufficient facts to apprise the defendant of the claims plaintiff intends to pursue." (citations omitted)).

Examining the First Amended Complaint in the light most favorable to Plaintiff, the Court concludes that she has stated a claim for sex discrimination under Title VII. The First Amended Complaint gives ResCare fair notice of her sex discrimination claim and the grounds upon which it rests. Specifically, Plaintiff alleges that ResCare demoted her and gave her position to a male with less seniority and fewer qualifications; took her office space away and gave it to a male; and paid her successor more and gave him more benefits even though he occupied the same position as she had. (Am. Compl. ¶ 58.) These facts are sufficient to meet Rule 8(a)'s pleading requirements. *Swierkiewicz*, 534 U.S. at 514, 122 S.Ct. at 999 ("Petitioner alleged that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA. His complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination. These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest."). *See also Harvey v. M.L. Smith, Jr., Inc.*, No. 07-1379, 2008 WL 2282178, at *3 (W.D. La. April 29, 2008) (finding that plaintiff had surpassed Rule 12(b)(6) standards in alleging his Title VII claim of hostile work environment because he indicated his race, described the conduct underlying the claim, stated that employees used racial epithets, indicated that others did not receive similar treatment, explained the protected activity he engaged in, and alleged that he was fired as a consequence); *Bookman v. Royal Ambulance Services, Inc.*, No.

Civ.A. 306CV0632M, 2006 WL 2506980, at *3 (N.D. Tex. Aug. 16, 2006) ("Plaintiff has plainly alleged that she was subjected to sexual harassment … and that Plaintiff's response to … [the] harassment prompted her termination from her position as a dispatcher. The pleading is legally sufficient to state a claim."). Therefore, Plaintiff's claim for sex discrimination survives the Motion to Dismiss.

### B. Violation of the ADA

Defendants argue that Plaintiff's disability claim fails for two reasons. (Mot. Dismiss at 5.) First, Defendants assert that Plaintiff has failed to plead that she has a disability, as required for recovery under the ADA. (*Id.*) Second, Defendants contend that Plaintiff has not adequately pleaded that any discrimination occurred. (*Id.*) Under the ADA, a covered entity—which "means an employer, employment agency, labor organization, or joint labor-management committee"—must not "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Accordingly, to state a claim under the ADA, a plaintiff must allege "that (a) she has a disability; (b) she is a qualified individual for the job in question; and (c) an adverse employment decision was made because of her disability." *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999). *See also Roman-Oliveras v. Puerto Rico Elec. Power Authority*, 655 F.3d 43, 48 (1st Cir. 2011) ("To state a claim of disability discrimination under Title I of the ADA, [a plaintiff] need[s] to allege facts showing that (1) he was disabled within the meaning of the Act; (2) he could perform the essential functions of his job; and (3) the employer took adverse action against him, in whole or in

part, because of his disability." (citing *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 82 (1st Cir. 2008); *Bailey v. Ga.-Pac. Corp.*, 306 F.3d 1162, 1166 (1st Cir. 2002))); *Stevens v. Illinois Dept. of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000) ("To make out a claim under the ADA, an individual must show: 1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation.").

"'As a threshold requirement in an ADA claim, the plaintiff must, of course, establish that he has a disability.'" *Waldrip v. General Elec. Co.*, 325 F.3d 652, 654 (5th Cir. 2003) (quoting *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996)). "The ADA defines 'disability' as, 'with respect to an individual[,] … a physical … impairment that substantially limits one or more major life activities of such an individual.'" *Id.* (quoting 42 U.S.C. § 12102(2)(A)). "To establish a claim under subsection A of the definition of disability, a plaintiff must allege that he (1) has a mental or physical impairment that (2) substantially limits (3) a major life activity." *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011). The ADA was amended by the ADA Amendments Act ("ADAAA"), however, which by its express language became effective on January 1, 2009. Since the actions Plaintiff complains of occurred after that date, the Court will examine the language set forth in the ADAAA. *See, e.g., Carbaugh v. Unisoft Intern., Inc.*, No. H-10-0670, 2011 WL 5553724, at *8 (S.D. Tex. Nov. 15, 2011); *Meinelt v. P.F. Chang's China Bistro, Inc.*, 787 F.Supp.2d 642, 651 (S.D. Tex. 2011).

Although the ADAAA left the ADA's three-category definition of "disability" intact, it made significant changes regarding how those categories should be interpreted.

"Under the ADAAA, the Court is required to construe the term 'disability' broadly and to provide coverage to the maximum extent possible under the ADA." *Patton v. eCardio Diagnostics LLC*, 793 F.Supp.2d 964, 968 (S.D. Tex. June 9, 2011) (citing *Cook v. Equilon Enters., L.L.C.*, 2010 WL 4367004, at *6 (S.D. Tex. Oct. 26, 2010); *Norton v. Assisted Living Concepts, Inc.*, 786 F.Supp.2d 1173, 1185-86, 2011 WL 1832952, at *7-8 (E.D. Tex. May 13, 2011)). "'Congress' stated purpose in expanding the definition of disability was to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis.'" *Id.* (quoting *Norton*, 786F.Supp.2d at 1185, 2011 WL 1932952, at *7-8). Under the ADAAA, the term "disability" means:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C.A. § 12102(1). "Major life activities" include, but are not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). A major life activity may also include "the operation of a major bodily function." *Id.* § 12102(2)(B). A person is regarded as having an impairment "if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3)(A). "An impairment that substantially limits one major life

activity need not limit other major life activities in order to be considered a disability." *Id.* § 12102(4)(C). An impairment may qualify as a disability even if it is episodic or in remission "if it would substantially limit a major life activity when active." *Id.* § 12102(4)(D). Therefore, "[f]ederal courts in Texas have applied the ADAAA's broader definition of 'disability' to include impairments that either are not of long duration or are 'episodic or are in remission.'" *Id.* (citing *Meinelt v. P.F. Chang's China Bistro, Inc.*, 787 F.Supp.2d 643, 2011 WL 2118709 (S.D. Tex. May 26, 2011); *Norton*, 786 F.Supp.2d 1173, 2011 WL 1832952).

In her Response to the Motion to Dismiss, Plaintiff avers that she suffers from a severe anxiety disorder that manifests itself in panic attacks, memory loss, and difficulty concentrating and breathing. (Resp. to Mot. Dismiss at 8.) Yet Plaintiff does not disclose these details in her First Amended Complaint. Plaintiff explains that "her physician was very concerned for her health" and felt she "should start medical leave immediately." (Am. Compl. ¶ 33.) Additionally, the First Amended Complaint alleges that she was "rushed to an emergency room because of the workplace stress and anxiety." (*Id.*) Plaintiff nowhere directly alleges that she suffered from a severe anxiety disorder; nor does she allege facts to support a claim of substantial impairment. Likewise, Plaintiff cannot prevail under subsection (b) because she has failed to allege "a record of an injury or impairment" and that the "impairment limited a major life activity." *See Hale*, 642 F.3d at 502 (quoting *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.*, 242 F.3d 610, 615 (5th Cir. 2001)). Nor can Plaintiff find relief under subsection (c). To meet subsection (c)'s "'standard, a plaintiff must show either that (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one

or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'" *Id.* (quoting *Kemp v. Holder*, 610 F.3d 231, 237 (5th Cir. 2010)). Plaintiff has not pleaded facts that would help her meet subsection (c)'s requirements.

Defendants also object that Plaintiff does not adequately plead any discrimination. (Mot. Dismiss at 7.) Specifically, Defendants aver that there are no factual allegations that Plaintiff was replaced by a person without anxiety or that she was treated less favorably than any nondisabled employees. (*Id.*) Additionally, Defendants point out that Plaintiff was granted FMLA leave and was gone for more than 2.5 months, the maximum amount of leave time permitted under the Act. (*Id.*) Therefore, Defendants urge, her allegation that she was refused time off has no merit. (*Id.*) Indeed, Defendants claim, they did not violate any discrimination law by posting her job as vacant, as she had been absent for more than the maximum amount of time allotted by the FMLA. (*Id.*)

To state a claim under the ADA, Plaintiff must plead that an adverse employment action was taken against her because of her disability. Plaintiff has alleged that ResCare violated the ADA by interfering with her performance of her employment; refusing to honor her medical request for time off; demanding that Plaintiff complete a work project before taking FMLA leave; ignoring Plaintiff's request to speak about her return date; failing to appear at a scheduled meeting to discuss the return date; posting her position of Operations Manager as vacant; demoting Plaintiff; and giving Plaintiff's position to a non-disabled person. (Am. Compl. ¶ 63.) Therefore, Plaintiff has succeeded in adequately pleading the discrimination portion of her ADA claim.

As Plaintiff fails to adequately allege that she suffers from a disability, her ADA claim must be dismissed. However, the Court dismisses that claim without prejudice to Plaintiff's amending her Complaint to cure the defects in her ADA claim within 7 days of the date of this Memorandum and Order.

### C. Retaliation

Defendants assert that Plaintiff has failed to state a claim for retaliation because she has failed to sufficiently plead the requisite "causal nexus." (Mot. Dismiss at 7-8.) According to Defendants, "[i]t is unclear what activity Plaintiff contends [the Defendant] is retaliating against her for." (*Id.* at 8.) Although Plaintiff participated in a discrimination investigation in June 2009 and again in April 2010, Defendants urge that there could be no retaliation because she was terminated in September 2010—a full 15 months and 5 months, respectively, before the alleged retaliatory action. (*Id.*) Defendants assert that "there is no allegation [in Plaintiff's First Amended Complaint] that any participation in any investigation led to her eventually being laid off." (*Id.*) Moreover, Defendants contend that Plaintiff's pleading shows she was terminated because her position had been eliminated. (*Id.*) As Plaintiff would have been fired even in the absence of the protected conduct, Defendants aver, Defendants cannot be held liable for her termination. (*Id.*)

"To state a claim for retaliation, a plaintiff must establish that: (1) he engaged in protected activity, as described in Title VII; (2) he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action." *Mota v. The University of Texas Houston Health Science Center*, 261 F.3d 512, 519 (5th Cir. 2001) (citing *Arnold v. U.S. Dep't of Interior*, 213 F.3d 193, 198 (5th Cir. 2000)). "'Protected activity' is defined as opposition to any practice

rendered unlawful by Title VII." *Id. See also Ackel v. National Communications, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) ("Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." (quotations and citation omitted)). "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2415 (2006). "[I]n order to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chemical Co., LLC*, 332 F.3d 874, 883 (5th Cir. 2003) (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001); *Chaney v. New Orleans Pub. Facility Mgmt., Inc.*, 179 F.3d 164, 168 (5th Cir. 1999)). The elements for establishing a *prima facie* case of retaliation under Title VII are similar to the elements of § 1981 retaliation, *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003); *Foley v. Univ. of Houston Sys.*, 324 F.3d 310, 316 (5th Cir. 2003)), and retaliation under the ADA, *Swanson v. Aegis Communications Group, Inc.*, No. 3-09-CV-41-D, 2010 WL 1779666, at *3 (N.D. Tex. March 22, 2010).

Plaintiff alleges that she engaged in protected activities, such as acting as a witness for Taylor's complaint (Am. Compl. ¶ 12) and making her own discrimination complaint with the Human Resources Director in April 2010 (Am. Compl. ¶ 29). The interval of five months between her complaint and her firing, *without more*, may be

insufficient to survive *summary judgment* on her claim for retaliation. *Ajao v. Bed Bath and Beyond*, 265 Fed.Appx. 258, 265 (5th Cir. 2008) (unpublished). *See also Clark County School Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" (citations omitted)). Yet this case is, of course, still at the dismissal stage. Furthermore, Plaintiff pleads extensive facts to support her claim for retaliation; her claim is not premised solely on the fact that the firing occurred five months after Plaintiff lodged her complaint. When evaluating whether a causal link has been shown, courts examine (1) the plaintiff's disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal relationship between the employee's conduct and the discharge. *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994). "A causal link is established when the evidence demonstrates that the employer's decision to terminate was based in part on knowledge of the employee's protected conduct." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (quotations and citation omitted). Plaintiff does not merely allege temporal proximity. *Smith v. Xerox Corp.*, 371 Fed.Appx. 514, 520 (5th Cir. 2010) (unpublished). Rather, Plaintiff alleges various actions by Defendants that, taken together, are sufficient to state a claim of a causal nexus.

Additionally, Defendants incorrectly characterize Plaintiff's complaint as showing that she was terminated because her position had been eliminated. (Mot. Dismiss at 8.) Plaintiff states: "*According to Foley*, [Plaintiff's] new and forced-upon position was

18

being eliminated." (Am. Compl. ¶ 49.) Earlier, Plaintiff explains that she was "told that because of budget cuts was being laid off." (*Id.* ¶ 48.) Plaintiff nowhere claims that her position was *actually* eliminated because of budget cuts. Plaintiff has presented sufficient facts to state a claim for retaliation. Therefore, Plaintiff's retaliation claim will not be dismissed.

### D. Intentional Infliction of Emotional Distress

Finally, Defendants assert that Plaintiff's claim for intentional infliction of emotional distress ("IIED") must be dismissed. First, Defendants aver that Plaintiff has available statutory remedies. (Mot. Dismiss at 9.) Second, Defendants insist that the facts alleged in Plaintiff's complaint do not rise to the level of extreme conduct necessary to support an IIED claim. (*Id.*) In contrast, Plaintiff contends that her IIED claim is not encompassed by statutory violations; further, as Plaintiff has not yet been deposed, Defendants do not know the sheer magnitude of her IIED claim. (Resp. to Mot. Dismiss at 13.)

Under Texas law, "a plaintiff may not bring an IIED claim when other statutory remedies are available for the underlying conduct." *Pacheco v. Zanios Foods, Inc.*, 502 F.Supp.2d 508, 512 (W.D. Tex. 2006) (citing *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)). IIED "is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (quoting *Zeltwanger*, 144 S.W.3d at 447). "Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill." *Id.* Therefore, courts have found that employees' IIED claims against supervisors are precluded when there are other statutory remedies available against the employer. *Id.*;

*Howe v. Yellowbook, USA*, --- F.Supp.2d ----, 2011 WL 6937611, at *5 (N.D. Tex. Dec. 21, 2011) ("While *Hoffmann-La Roche* applied the gap-filler doctrine to preempt IIED claims where the same facts were raised in the plaintiff's claim under the TCHRA, federal courts in this district have applied that same doctrine to IIED claims raised alongside Title VII claims." (citations omitted)); *Muniz v. El Paso Marriott*, No. EP-09-CV-274-KC, 2009 WL 4878619, at *3 (W.D. Tex. Dec. 8, 2009) ("Under Texas law, a claim for IIED is not available against an employee's supervisor if the same alleged conduct supports a claim for relief against the employer under other legal theories, such as the anti-discrimination statutes."); *Rawlings v. Travelers Property Cas. Ins. Co.*, No. 3:07-CV-1608-O, 2008 WL 2115606, at *4 (N.D. Tex. May 20, 2008) ("[A] plaintiff cannot bring a claim for intentional infliction of emotional distress against a *defendant supervisor* where the plaintiff could bring a state statutory claim or other tort claim against *plaintif's [sic] employer* based on the same conduct alleged. Accordingly, for Plaintiff to have stated a claim on which she has a reasonable basis of recovery against … her former supervisor, Plaintiff's IIED claim cannot be based on facts that could form the basis of any workplace harassment or discrimination claim at all, even an action solely against her employer." (citations omitted)); *Pacheco*, 502 F.Supp.2d at 512.

Plaintiff "has not attempted to distinguish the conduct which supports the IIED claim from the conduct which supports the statutory workplace claims." *Muniz*, 2009 WL 4878619, at *3. Plaintiff "is attempting impermissibly to predicate an IIED claim on the same conduct which underpins" her discrimination and retaliation claims. *Id.* In other words, the "gravamen" of her claims is discrimination, and she invokes the same facts "to show discrimination … that she relies on to show intentional infliction of emotional

20

distress." *Swafford v. Bank of Am. Corp.*, 401 F.Supp.2d 761, 764 (S.D .Tex. 2005). *See also Phillips v. United Parcel Service*, No. 3:10–CV–1197–G–BH, 2011 WL 2680725, at *14 (N.D. Tex. June 21, 2011) ("Since Plaintiff relies on the same alleged conduct as part of her discrimination, harassment, and retaliation claims, her claim of intentional infliction of emotional distress is preempted.").

Additionally, Plaintiff's allegations do not state a claim for IIED. To recover on an IIED claim, "a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Swafford*, 401 F.Supp.2d at 764-65. "Extreme and outrageous conduct is conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* at 765 (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). Indeed, "allegations and evidence of vulgar joke-telling, verbal abuse, unfair evaluations, and unfair and discriminatory job termination, [do] not, as a matter of law, rise to the level of extreme or outrageous conduct." *Id.* "Conduct that is merely insensitive or rude is not extreme and outrageous, nor are 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Kroger Texas Ltd. Partnership v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006) (quoting *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)). The actions Plaintiff complains of do not qualify as extreme or outrageous conduct. *See Phillips v. United Parcel Service*, No. 3:10-CV-1197-G-BH, 2011 WL 2680725, at *14 (N.D. Tex. June 21, 2011) ("Most of Plaintiff's allegations involve 'mere employment disputes' which is not the type of

21

conduct that an intentional infliction of emotional distress claim recognizes."). Plaintiff's IIED claim must be dismissed. As IIED claims are merely gap-fillers and any amendment of the IIED claim would likely be futile, the Court dismisses the IIED claim with prejudice.

### IV. CONCLUSION

For the reasons explained above, Plaintiff's IIED claim is dismissed with prejudice. Plaintiff's ADA claim is dismissed without prejudice to filing a Second Amended Complaint within 7 days of the date of this Memorandum and Order. Plaintiff's remaining claims survive Defendants' Motion. Defendants' Motion is therefore **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 21st day of April, 2012.

**KEITH P. ELLISON**
**US DISTRICT COURT JUDGE**